**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3383-17T1

NEW JERSEY CHINESE
COMMUNITY CENTER,

      Plaintiff-Appellant,

v.

VINCENT DOMINACH,

      Defendant-Respondent.

_____

      Argued February 5, 2019 – Decided July 9, 2019

      Before Judges Rothstadt and Natali.

      On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0014-17.

      Cynthia Mei Hwang argued the cause for appellant.

      Brian P. Trelease argued the cause for respondent (Rainone Coughlin Minchello, LLC, attorneys; Brian P. Trelease, of counsel; Conor J. Hennessey, on the brief).

PER CURIAM

Plaintiff New Jersey Chinese Community Center filed a complaint in January 2017 against defendant Vincent Dominach individually and in his "official capacity" as the zoning officer for the Township of Franklin. The complaint sought damages arising from defendant allegedly tortiously interfering with plaintiff's lease with a former tenant in 2014 and 2016 by using the powers of his office to assist the tenant in its efforts to break its lease. Plaintiff now appeals from the Law Division's March 20, 2018 order granting defendant's motion for summary judgment and dismissing plaintiff's complaint with prejudice. We affirm, substantially for the reasons stated in Judge Thomas C. Miller's comprehensive twenty-nine page written decision that accompanied the order granting summary judgment.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff, the party who opposed entry of summary judgment. Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017). Plaintiff operated a school from a building on property it owned in Franklin. In 2008, it leased part of the same building to Central Jersey College Prep Charter School (Central). In 2014, Central applied to Franklin's zoning board for variances and approvals relating to its proposed construction of a "bubble"

gymnasium on the demised premises.  Plaintiff approved Central's application, although it believed that it gave its approval to plans that were different than what was submitted to defendant and the zoning board.  After a public hearing in February 2015 at which there were no objectors, Central's application was approved.  Despite that approval, Central never applied for a construction permit or began construction of the gymnasium.

After the approval, in October 2015, plaintiff filed a summary dispossession matter seeking Central's eviction for reasons unrelated to the construction of the gymnasium.  Its efforts were unsuccessful and in an unpublished opinion, we affirmed the dismissal of plaintiff's complaint in that action.  See N.J. Chinese Cmty. Ctr. v. Cent. Jersey Coll. Prep Charter Sch., No. A-0769-16 (App. Div. Dec. 1, 2017).

Also after the approval, plaintiff determined that there were problems with Central's plans that would cause the proposed structure to block fire exits from plaintiff's portion of the building and interfere with its loading dock.  For that reason, plaintiff met with defendant and Central's attorney to discuss its proposal to construct a larger gym facility that plaintiff and Central could share.

According to plaintiff, at the meeting, Central took the position that because it already had approval to construct a gymnasium, plaintiff's pursuit of

an application to build a different structure would require either Central's consent or Central's abandonment of its approved project. After the meeting, defendant emailed plaintiff and confirmed that he agreed with Central's position and that allowing plaintiff's application to proceed without Central's approval "would be usurping the rights of an already approved applicant . . . ."

Central's attorney advised plaintiff that Central's cooperation in plaintiff's pursuit of approvals for a new gymnasium would require a modification to their lease allowing Central to terminate it at any time with one year's notice. Plaintiff would not agree to the modification.

In November 2015, plaintiff filed a complaint in lieu of prerogative writs against defendant, alleging that he wrongfully prevented plaintiff from having its application considered by the zoning board. The following month, in an effort to resolve the dispute, Franklin agreed to accept plaintiff's application, have the zoning board consider it and that, if approved, it would supersede Central's approval. The Law Division subsequently dismissed plaintiff's complaint for failure to exhaust administrative remedies and plaintiff pursued the approvals. However, in reviewing plaintiff's application, defendant required certain design changes that included, among others, revisions to insure that

plaintiff's proposed construction would not interfere with Central's use of the demised premises. Plaintiff then withdrew its application.

In October 2016, Central filed an application with defendant for approval of plans that it prepared for alterations to a structure at a different location at which it intended to relocate its operations. Central later obtained approvals from the zoning board and in September 2017, it completed its relocation from plaintiff's building to the new facility.

At about the same time that Central filed for the approvals it needed to relocate, it also filed a declaratory judgment action against plaintiff seeking a determination that plaintiff breached its lease with Central by interfering with its approved plans to construct the gymnasium at plaintiff's property and for damages. That matter is still pending.

Plaintiff filed this action against defendant in January 2017. In March, plaintiff filed a Notice of Tort Claim,[1] identifying as wrongful conduct

---

[1] A Notice of Tort Claim is required by New Jersey's Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, which governs claims against a public entity or public employee for money damages. "'[T]he Act establishes the procedures by which claims may be brought,' including a mandatory pre-suit notification of [the] claim." Rogers v. Cape May Cty. Office of the Pub. Def., 208 N.J. 414, 420 (2011) (first alteration in original) (quoting Beauchamp v. Amedio, 164 N.J. 111, 116 (2000)).

A-3383-17T1

defendant's actions in 2014 through 2016 relating to rejecting plaintiff's application and those referenced in plaintiff's complaint about defendant's tortious interference with the lease and his abuse of power. Defendant filed an answer in which he denied plaintiff's allegations and asserted affirmative defenses that included his immunity from suit and plaintiff's failure to comply with the TCA.

Defendant then filed his motion for summary judgment. After considering the parties' written submissions and oral arguments, Judge Miller entered the order granting summary judgment, setting forth his reasons in his accompanying written decision. In his decision, the judge reviewed the parties' contentions on summary judgment, the history of their relationship, and the various litigations filed by plaintiff and Central. He then turned to defendant's claim that summary judgment was warranted because plaintiff failed to comply with the TCA.

The judge set forth a detailed analysis of the TCA and about when plaintiff's claims relating to defendant's conduct were known or should have been known by plaintiff. The judge concluded that because plaintiff's allegations about defendant's wrongful conduct dated back to 2015, its Notice of Tort Claim was not served in accordance with the TCA's requirements.

A-3383-17T1

Judge Miller next addressed defendant's claim that he was immune from suit by plaintiff. Here again, the judge conducted a detailed analysis of the applicable law. Citing to N.J.S.A. 59:3-2(b) ("[a] public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature"), and Siegel v. Bd. of Adjustment of City of Newark, 137 N.J.L. 423 (1948), he found that defendant's actions throughout the history of plaintiff's and Central's competing applications were "clearly part of the discretionary actions that he is required to take as part of his responsibilities . . . . [a]s such, his actions warrant immunity."

Judge Miller also considered whether if defendant was not entitled to absolute immunity, under the circumstances, he would still be entitled to qualified immunity under N.J.S.A. 59:3-3 ("[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law"). After another thorough analysis, the judge concluded that, to the extent plaintiff's claim against defendant was based upon his 2015 view that plaintiff's application could not be considered without Central withdrawing its approved application, or upon defendant later processing Central's application to relocate, defendant was entitled to qualified immunity. The judge stated that defendant's legal position "had a 'colorable' basis in the law" as it related to plaintiff's application, and he

was obligated by the law to process Central's application to relocate. Finally, he found that plaintiff failed to establish any evidence that "demonstrate[d] that [d]efendant acted unreasonably or without good faith."

Since he already determined that defendant was entitled to summary judgment based upon immunities and plaintiff's noncompliance with the TCA, Judge Miller declined to consider whether plaintiff's claims of tortious interference with contract or abuse of power were supported by sufficient evidence to defeat summary judgment. According to the judge, "[i]ssues involving judgment of reasonableness and state of mind (intent) are matters that are generally not conducive for disposition by summary judgment." This appeal followed.

On appeal, plaintiff argues that Judge Miller erred in finding that it was "implausible" that defendant could be held responsible for "the termination of a landlord/tenant contract." Also, it contends that the judge abused his discretion "in dismissing plaintiff's complaint in 2015 on the grounds that damages were 'speculative,'" and then dismissing the present action, when plaintiff has established its damages, because of plaintiff not serving its Notice of Tort Claim at that time. Plaintiff also argues that the judge failed to explain "why [its] position lacks merit" and also abused his discretion by concluding that

defendant's actions as zoning officer in not processing plaintiff's zoning application were discretionary, but as to Central's application to relocate, he was under a legal duty to process the application.

We review a grant of summary judgment using the same standard that governs the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that "there are [no] genuine issues of material fact and . . . the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Id. at 24 (quoting Bhagat, 217 N.J. at 38). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation

omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. RSI Bank, 234 N.J. at 472.

"To defeat a motion for summary judgment, the opponent must '"come forward with evidence" that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citations omitted).

We conclude from our de novo that plaintiff failed to meet its burden in opposition to defendant's motion for summary judgment and its contentions on appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by Judge Miller in his thoughtful and thorough written decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3383-17T1